UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>        v.<br><br>SIBONEY CORPORATION,<br><br>        Defendant. | Court No. 22-00204 |

## COMPLAINT

The United States, through its undersigned attorneys, brings this civil action against Siboney Corporation (Siboney), and alleges the following:

1. This action is brought by the United States on behalf of the Department of Homeland Security, U.S. Customs and Border Protection (CBP), to recover unpaid Federal Excise Tax (FET), stemming from violations of 19 U.S.C. § 1592(a), with respect to 32 entries of large cigars made between July 8, 2013 and December 2, 2015.

2. This Court possesses exclusive jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1582.

3. At all relevant times with respect to the imported entries at issue, defendant Siboney was a Florida corporation with a principal place of business and mailing address at 7084 NW 50th Street, Unit 3, Miami, Florida 33166, and was authorized to import tobacco products into the United States.

4. Beginning after August 9, 2016, and as of the filing date of its 2022 Florida Profit Corporation Annual Report, Siboney is listed as a Florida corporation with a principal place of business and mailing address at 10212 NW 80th Avenue, Hialeah Gardens, Florida 33016.

5. Siboney is the importer of record for the 32 entries of large cigars referenced in paragraph 1.

**TOBACCO EXCISE TAXES**

6. CBP is responsible for collecting FET for imported cigars either at the time of importation on a Consumption Entry or following withdrawal from a bonded warehouse. 19 C.F.R. §§ 141.3, 144.2; 27 C.F.R. § 41.62.

7. The FET rate for large cigars is "a tax equal to 52.75 percent of the price for which sold but not more than 40.26 cents per cigar." 26 U.S.C. § 5701(a)(2).

8. The "price for which sold," 26 U.S.C. § 5701(a)(2), for tobacco products in determining the amount of FET is based upon the sale from an importer to a domestic purchaser in an arm's length transaction. *Id.*; https://www.ttb.gov/images/industry_circulars/archives/2011/11-03.html.

9. If the product is not sold in an arm's length transaction at less than fair market price, then "the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary." 26 U.S.C. § 4216(b)(1)(C).

10. The governing regulation directs that a sale is not made at arm's length when "(1) [o]ne of the parties is controlled (in law or in fact) by the other, or there is common control . . . or (2) [t]he sale is made pursuant to special arrangements between a manufacturer [importer] and a purchaser." 26 C.F.R. § 48.4216(b)-2(e).

11. TTB has publicly provided guidance for the tobacco industry on the importation of tobacco products and how to calculate the tax on imported large cigars. *See* TTB Industry

Circular 2011-03, section 2(e)(3), April 26, 2011, located at

https://www.ttb.gov/images/industry_circulars/archives/2011/11-03.html.

12. TTB's guidance provides that "the sale price is the price for which the products are sold by a domestic manufacturer or importer to an unrelated purchaser in an arm's length transaction," and "not the price the importer paid for the products to a foreign manufacturer." *Id.*

13. "If the domestic manufacturer or importer sells the cigars at retail, on consignment, to an affiliated corporation, to certain retailers, or to another entity in a transaction that is not at arm's length and at less than fair market price, TTB encourages the manufacturer or importer to contact TTB for further information regarding the application of the constructive sale price rules." *Id.*

## SIBONEY'S VIOLATIONS

14. From July 8, 2013 to December 2, 2015, Siboney, as importer of record, imported large cigars from Nicaragua into the United States under the cover of 32 entries identified in Exhibit A.

15. The imported cigars were manufactured in Nicaragua and exported by Montana Azul Cigars, S.A. (Montana Azul).

16. The Tax Audit Division, Alcohol and Tobacco Tax and Trade Bureau (TTB), Department of Treasury, conducted an audit of certain of Siboney's entries, including the 32 at issue in this action.

17. In the course of the audit, TTB discovered that Siboney had not properly calculated the FET due on each of the audited entries.

18. Instead, the FET declared by Siboney for the large cigars covered by each entry was calculated on the sales price from Montana Azul plus a markup of five percent, which was

the amount charged by Siboney to Blue Mountain Cigars (BMC) (a fictious name owned by Siboney) and GAMATTSA (a Siboney-affiliated wholesaler), rather than the fair market U.S. domestic sales prices and/or constructive sales prices to calculate its actual FET liability.

19. Based on documents available at sunbiz.org, Florida's Division of Corporation website, BMC is a fictitious name registered and fully owned by Siboney.

20. The fictitious name, BMC, was in effect at all times during the relevant time period.

21. Under Florida law, BMC is a fiction involving the name of the real party in interest, *i.e.*, Siboney, and has no independent legal existence. *See Osmo Tec SACV Co. v. Crane Env't, Inc*., 884 So. 2d 324, 327 (Fla. Dist. Ct. App. 2004). Instead, a company and its fictitious entity are one in the same. *Omega Psi Phi Fraternity, Inc. v. HCE Group of Companies, Inc*., 2011 WL 13228098, *4 (S.D. Fla. Oct. 19, 2011).

22. Because Siboney and BMC are one and the same, there could be no arm's length transactions between them. Further, because BMC is a fiction owned by Siboney, Siboney completely controls BMC.

23. Siboney violated the law and regulations addressing the proper calculation of FET by using Montana Azul's price plus a nominal five percent markup as the price upon which to calculate the FET for cigars it claims were sold domestically to BMC.

24. Instead, FET should have been calculated using the prices of the large cigars sold by Siboney using the fictitious BMC name.

25. TTB determined that the sales between Siboney and GAMATTSA were not at arm's length because Siboney acted as an agent for GAMATTSA.

26. TTB also determined that the relationship between Siboney and GAMATTSA was not at arm's length under because their relationship satisfies the conditions described in 26 C.F.R. § 48.4216(b)-2(e).

27. Specifically, several of Siboney's corporate officers served on the corporate board of GAMATTSA and held ownership stakes simultaneously in both Siboney and GAMATTSA.

28. Based on documents available at sunbiz.org, Florida's Division of Corporation website, from the date of GAMATTSA's incorporation on January 12, 2015, through the date of the last importation at issue on December 2, 2015, Jacqueline Riquene (now known as Jacqueline Wright) has alternately served as GAMATTSA's President or Vice President, while simultaneously serving as President of Siboney from October 8, 2013 until April 9, 2015, when she became Siboney's Vice President.

29. As of October 26, 2015, Ms. Riquene possessed overlapping ownership stakes in both Siboney and GAMATTSA, owning 30 percent and 4 percent of each company respectively.

30. Similarly, Francisco Hechavarria concurrently held the roles of Secretary on Siboney's corporate board and Vice President of GAMATTSA between the dates of January 12, 2015 to April 9, 2015.

31. Further, it appears that familial ties exist between the corporate officers of Siboney and GAMATTSA because Mr. Marvin Wright and Ms. Jaqueline Riquene were married in a foreign country and reside at the same address. Marvin Wright served as President of Siboney from November 24, 2009 through October 8, 2013, and April 9, 2015 to present. Ms. Riquene served alternatively as President and Vice President of GAMATTSA from January 12, 2015 until present. At the time of incorporation of Siboney, Mr. Wright and Ms. Riquene lived

at the same address. Further, October 31, 2013 and April 13, 2015 amendments to Siboney's articles of incorporation reflect that they continued to live at the same address.

**A.     False Statements, Acts, and Omissions**

32.     Siboney erroneously calculated the FET associated with the 32 entries at issue here by failing to follow the statutes and regulations providing the proper method for excise tax calculations for large cigars.

33.     Siboney filed entry documentation that contained false FET calculations that were not based on arm's length transactions.

34.     Siboney wrongfully used the large cigar prices invoiced by the foreign manufacturer (plus five percent), instead of the fair market U.S. domestic sales prices and/or constructive sales prices to calculate its FET liability.

35.     Siboney's entry documentation for the 32 subject entries violated applicable legal requirements that address the manner in which companies should calculate FET. *See* 26 U.S.C. § 5702(l); 26 C.F.R. § 48.4216(a)-1; 27 C.F.R. § 41.39; 27 C.F.R. § 40.22.

36.     Siboney entered merchandise with false statements, acts, and omissions when it provided its false FET calculations on the entry documents to CBP.

**B.     Materiality**

37.     TTB's audit determined that, as to the 32 entries, Siboney undercalculated its FET by $215,969.79.

38.     A document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing agency action such as determining an importer's liability for duty. 19 C.F.R. Part 171, Appendix B, Para. (B).

39. The false statements on Siboney's entry documents submitted to CBP concerning the amount of FET due influenced CBP's ability to accurately ascertain the FET due.

40. The false statements about FET on Siboney's entry documents were material.

**C.  Culpability**

41. An importer is negligent when it fails "to exercise the degree of reasonable care and competence expected from a person in the same circumstances […] to ensure that statements made and information provided in connection with the importation of merchandise are complete and accurate; or (b) to perform any material act required by statute or regulation." 19 C.F.R. Part 171, App. B.

42. Importers of tobacco products are liable for the FET.  26 U.S.C. § 5703(a)(l).

43. The sham transactions between Siboney and BMC, and the transactions between Siboney and GAMATTSA, were not at arm's length.

44. Siboney did not follow the relevant statutes, regulations or guidance from TTB in calculating its FET.

45. Siboney could not establish fair market pricing in its BMC and GAMATTSA transaction and failed to calculate the constructive sales price correctly.

46. Siboney's errors in properly calculating the FET due for its 32 entries were not the result of clerical errors or mistakes of fact.

47. Siboney had a duty to ascertain the propriety of using BMC, its fictitious name; and to determine whether and how its relationship with GAMATTSA could affect its tax obligations.

48. Siboney cannot establish that it made a good faith effort to confirm that its declarations to CBP were accurate or that it made a proper verification, either before or after importation, that the FET rate it used for large cigars was correct.

49. The above facts show that Siboney committed, at a minimum, a negligent violation under 19 U.S.C. § 1592(a).

50. Through its attorney, Siboney responded to TTB's tax adjustment based on TTB's review of Siboney's compliance with the applicable FET laws and regulations. Siboney also responded, through its attorney, to CBP's letter affirming that $215,969.79 in unpaid FET was still owed. Siboney's counsel submitted a supplemental petition to CBP by letter dated September 27, 2018. CBP advised Siboney's counsel by letter dated May 13, 2019 that the supplemental petition had been denied.

51. CBP issued three demands for payment of the $215,969.79 in unpaid FET by notices dated June 17, 2019, July 2, 2019, and July 15, 2019.

52. In July 2019, Siboney tendered two payments in the total amount of $5969.00 toward paying the outstanding FET. Also, two sureties who issued bonds covering the entries made payments fully satisfying their bond liabilities. The bond payments and Siboney's payments reduced the outstanding FET obligation to $114,981.17.

53. As a result of the violations described above, the United States was deprived of lawful FET in the amount of $215,969.79, of which $114,981.17 remains unpaid.

## COUNT I

54. The allegations contained in paragraph 1 through 53 above are restated and incorporated by reference.

55. Based on its violations of 19 U.S.C. § 1592(a) and under 19 U.S.C. § 1592(d), Siboney is liable to the United States for $114,981.17 in unpaid Federal Excise Tax owed for the subject entries dated from July 8, 2013 through and including December 2, 2015.

WHEREFORE, the United States respectfully requests that the Court enter a judgment against defendant Siboney for $114,981.17 in unpaid Federal Excise Tax, plus attorney fees, costs, and such other and further relief as may be just and appropriate, including any interest provided by law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:  /s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

*OF COUNSEL*:
CHRISTOPHER MERINO
Attorney
Office of the Associate Chief Counsel
U.S. Customs and Border Protection
909 S.E. 1st Avenue, Suite 606
Miami, Florida 33131

/s/ Beverly A. Farrell
Senior Trial Attorney
International Trade Field Office
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230 or 0483
Attorneys for Plaintiff United States

Dated: July 12, 2022

# EXHIBIT A

**ENTRIES AT ISSUE**

(July 8, 2013 through and including December 2, 2015)

1. BPQ50059562
2. BPQ50060495
3. BPQ50061154
4. BPQ50062681
5. BPQ50063051
6. BPQ50064414
7. BPQ50065197
8. BPQ50066633
9. BPQ50067326
10. BPQ50068126
11. BPQ50069975
12. BPQ50070981
13. BPQ50072193
14. BPQ50073894
15. BPQ50074397
16. BPQ50075212
17. BPQ50076723
18. BPQ50079495
19. BPQ50080287
20. BPQ50081335
21. BPQ50092001
22. BPQ50092464
23. BPQ50092845
24. BPQ50094072
25. BPQ50094619
26. BPQ50094841
27. BPQ50095871
28. BPQ50096499
29. BPQ50097141
30. BPQ50098677
31. BPQ50099311
32. BPQ50100390

Total Federal Excise Tax Calculated by Siboney Corporation:  $156,162.19

Total Federal Excise Tax Calculated by TTB:  $372,131.98

Underpaid Federal Excise Tax:  $215,969.79